SWAIN *v.* SCHIEFFELIN *et al.*

*(Supreme Court, General Term, Second Department.   December 10, 1890.)*

1. APPEAL—REVIEW—WEIGHT OF EVIDENCE—EXPERT TESTIMONY.

Plaintiff, in making ice-cream, used for imparting color to it a compound called "carlat red," purchased by him for that purpose from defendants, the manufacturers. Persons who partook of the cream became sick, and manifested symptoms of arsenical poisoning; and plaintiff suffered loss of business therefrom, and was compelled to destroy the ice-cream colored with such substance. In an action for damages therefor, it appeared that the "carlat red" contained a small proportion of arsenic, and that only those persons who ate cream with which it had been mingled were made sick. Experts testified that the quantity of arsenic in the portion sold to plaintiff was too small to produce injurious results, and that the sickness was to be attributed to other poisonous substances in the milk used. *Held,* that a verdict for plaintiff could not be set aside as unsupported by evidence.

2. DAMAGES—LOSS OF BUSINESS.
    Plaintiff might recover damages for injury to his business resulting therefrom as well as for his loss by destruction of the poisonous ice-cream.

Appeal from circuit court, Kings county.

Action by Enoch C. Swain against William H. Schieffelin, William N. Clark, William S. Mersereau, and William L. Brower. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion to reduce the verdict, defendants appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Jay & Candler*, (*William Jay* and *John Jay Chapman*, of counsel,) for appellant. *Payne, McGuire & Low*, (*John C. McGuire*, of counsel,) for respondent.

DYKMAN, J. The plaintiff is a manufacturer of ice-cream, and other similar substances, which he sells to different people for consumption as an article of food. The defendants are engaged in the business of manufacturing chemicals and extracts, and other similar substances, for sale, and in December, 1888, they sold to the plaintiff a liquid compound, called "carlat red," to be used by him as a coloring substance for his ice-cream. The coloring substance so sold was used by the plaintiff to impart a strawberry hue to his ice-cream, which he sold to his customers in the usual course of his business, and the persons who partook of the same became sick, and manifested symptoms of arsenical poisoning. The facts received publicity, and the plaintiff sustained loss of business, besides destroying $100 worth of the poisoned cream, and this action was commenced for the recovery of his damage. The cause was tried at the circuit before a jury, and a verdict was rendered in favor of the plaintiff for $800. Thereupon the counsel for the defendants moved for a new trial, and to reduce the verdict to $50, the damages which the jury found the plaintiff had sustained by the destruction of the ice-cream rendered useless by the presence of carlat red; and both motions were denied, and the defendants have appealed from the judgment entered upon the verdict, and from the order denying the motions.

The main defense to the action is founded upon the inadequacy of the cause to produce the alleged effects upon the customers of the plaintiff, and the insistence is that, although the coloring substance called "carlat red" does contain small proportions of arsenic, yet the quantity contained in the portion sold to the plaintiff by the defendants was so small as to be incapable of producing injurious results upon the consumer. To that defense the testimony of the defendants was mainly directed, and the evidence so adduced made a strong case in support of the position. The witnesses for the defendant, however, admit the presence of arsenic in carlat red. On the part of the plaintiff upon this question, there was the undisputed sickness of the persons who partook of the substances with which the carlat red was mingled. It was mixed only with the strawberry and chocolate ice-creams, and apricot water-ice, and only the persons who consumed those two varieties were made sick. So that the plaintiff went to the jury with proof of the presence of arsenic in the carlat red, sickness resulting to those who ate it, with symptoms of arsenical poison, and absence of adequate causes for the effect. Then came the men of science and said it was impossible to produce the results experienced by the diminutive quantity taken into the system. The weight of the testimony of one of the experts who endeavored to attribute the sickness to poisonous substances in the milk was diminished by the fact that none of the persons who ate the lemon and vanilla cream were sickened. Thus the case stood with fact on one side and theory on the other, and who was to locate the truth. Assume for the testimony on the part of the defendants all that they claim for it, yet, with the facts adduced by the plaintiff, no appellate tribunal can say the verdict is unsupported.

All the facts and circumstances, and the scientific theories, went to the jury, and it is easily perceived how that body would seize upon an undisputed fact in preference to a scientific theory. Hypothetical testimony is no better than the assumption upon which it is based. If a supposition be faulty, the hypothesis is unreliable; and if, in this instance, an unusual quantity of arsenic went into the carlat red by mistake or carelessness, the scientific testimony respecting the impossibility of the results attributed to its use would be without value. In whatever light we view the testimony, we cannot escape the decision of the jury, and we cannot say it is destitute of support. The charge of the trial judge is not furnished, and we assume that the case was submitted to the jury with proper directions. Fault is found with the measure of damages, but we can find no error in that respect. The judgment and order appealed from should be affirmed, with costs.